**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THOMAS J. GERRARD, | : | **Hon. Peter G. Sheridan** |
|  | : |  |
| Petitioner, | : | Civil No. 04-6056 (PGS) |
|  | : |  |
| v. | : |  |
|  | : |  |
| R. DAVID PARRISH, et al., | : | **O P I N I O N** |
|  | : |  |
| Respondents. | : |  |

**APPEARANCES:**

>    THOMAS J. GERRARD
>    907 North Michigan Avenue
>    Atlantic City, New Jersey  08401
>    Petitioner pro se

>    LESLIE-ANN M. JUSTUS, Deputy Attorney General
>    ATTORNEY GENERAL OF STATE OF NEW JERSEY
>    P.O. Box 086
>    Trenton, New Jersey  08625
>    Attorneys for Respondents

**SHERIDAN**, District Judge:

Thomas J. Gerrard filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §

2254(a) challenging a judgment of conviction in the Superior Court of New Jersey.  By Opinion

entered January 17, 2007, this Court stayed the Petition while Petitioner exhausted Ground

Twelve before the New Jersey Courts.  (Docket Entry #22.)  By letter filed August 5, 2010,

Petitioner notified this Court that he exhausted state court remedies with respect to Ground

Twelve effective July 12, 1010, and requested that the matter be restored to the active docket.

(Docket Entry #24.)  This Court reopened the file, directed Respondents to file a supplemental

answer and record limited to the merits and affirmative defenses relating to Ground Twelve of

the Petition at Docket Entry #9, and ordered Petitioner to file a reply to the supplemental answer.

Because mail sent to Petitioner was returned to the Clerk as undeliverable, this Court

administratively terminated the case by Order filed July 13, 2011.  (Docket Entry #33.)

Petitioner has since notified the Clerk of his new address and asked this Court to reopen

the case and determine the merits of his habeas claims.  For the reasons expressed below, this

Court will reopen the file, dismiss the Petition on the merits, and deny a certificate of

appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction initially filed on April 19, 2002, and

amended on September 7, 2007, in the Superior Court of New Jersey, Law Division, Monmouth

County, after a jury convicted him of second degree attempted theft in violation of N.J. STAT.

ANN. §§ 2C:5:1, 2C:20-3(a), 2C:20-2(b)(1)(a), third degree aggravated assault upon a police

officer in violation of N.J. STAT. ANN. §§ 2C:12-1(b)(5)(a), and third degree resisting arrest in

violation of N.J. STAT. ANN. §§ 2C:29-2(a)(3)(a).  On April 19, 2002, the Law Division denied

Petitioner's motion for a new trial or acquittal, denied the government's motion for an extended

sentence as a persistent offender, and sentenced Petitioner to a term of 10 years, with a five-year

period of parole eligibility, for attempted theft, a consecutive five-year term, with two years of

parole ineligibility, for aggravated assault, and five years, with two years of parole ineligibility,

for resisting arrest, to run concurrent to the term for  aggravated assault.[1]  Petitioner appealed.

_____

[1] On August 1, 2002, the Law Division amended the judgment to reflect a change in jail
credit, and on October 7, 2002, the Law Division amended the judgment to reflect the parole
(continued...)

2

On May 19, 2004, the Appellate Division of the Superior Court of New Jersey affirmed the conviction and sentence.  See State v. Gerrard, Docket No. A-5635-01T4 slip op. (N.J. Super., App. Div., May 19, 2004).  On July 26, 2004,  the New Jersey Supreme Court denied certification.  See State v. Gerrard, 181 N.J. 287 (2004) (table).  On August 3, 2004, Petitioner filed a motion asking the New Jersey Supreme Court to reconsider the denial of certification on the basis of the United States Supreme Court's ruling on June 24, 2004, in Blakely v. Washington, 542 U.S. 296 (2004).  On November 5, 2004, the New Jersey Supreme Court granted Petitioner's motion for reconsideration and denied certification.  See State v. Gerrard, 182 N.J. 145 (2004) (table).

Petitioner executed his original § 2254 Petition on December 7, 2004.  On December 20, 2004, the Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  By Order entered April 11, 2006, this Court construed Petitioner's Brief and Appendix (Docket Entry #9) as Petitioner's all-inclusive § 2254 Petition, directed service on Respondents, ordered Respondents to file an answer, and permitted Petitioner to file a reply. (Docket Entry #11.)  After reviewing the Answer, record, and Petitioner's Brief and Reply, by Opinion entered January 17, 2007, this Court determined:  (1) although Grounds Six, Nine and Eleven were not exhausted, those grounds need not be exhausted because they did not even present colorable federal claims, and (2) because Ground Twelve presented a potentially

---

[1](...continued)
ineligibility periods on counts two and three.

3

meritorious federal claim, this Court stayed the Petition while Petitioner exhausted Ground Twelve before the New Jersey Courts.  (Docket Entry #22.)

By letter filed August 5, 2010, Petitioner notified this Court that he exhausted state court remedies with respect to Ground Twelve effective July 12, 1010, and requested that the matter be restored to the active docket.  (Docket Entry #24.)  By Order entered June 1, 2011, this Court reopened the file, directed Respondents to file a supplemental answer and record limited to the merits and affirmative defenses relating to Ground Twelve of the Petition, and ordered Petitioner to file a reply to the supplemental answer.  After Respondents filed a Supplemental Answer (Docket Entry #31) and mail sent to Petitioner was returned to the Clerk as undeliverable after he was released, this Court administratively terminated the case by Order filed July 13, 2011, because Gerrard failed to advise the Clerk of a change of address, as required by Local Civil Rule 10.1(a).  (Docket Entry #33.)  Petitioner thereafter notified the Clerk of his new address and asked this Court to reopen the case and determine whether he was entitled to a Writ of Habeas Corpus vacating the conviction and sentence.

At this time, this Court will reopen the file and consider the merits of the Petition.[2]  The grounds are set forth below verbatim:

> Ground One:  TRIAL COURT'S FAILURE TO PROPERLY CHARGE THE JURY IN GRADING AN ATTEMPTED THEFT OFFENSE BASED UPON ACTUAL POSSESSION OR CONTROL OVER MOVABLE PROPERTY CONSTITUTED PLAIN ERROR.

---

[2] Because this Court previously ruled that Grounds Six, Nine and Eleven did not present colorable federal claims, this Court will not now reconsider the merits of those grounds, but will reject those claims on the merits pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Ground Two:  TRIAL COURT['S] FAIL[URE] TO OBTAIN THE
ACCURATE AND AUTHENTIC MARKET VALUE OF THE
MERCHANDISE BEFORE CHARGING THE JURY WITH ANY
GRADE OF ATTEMPTED THEFT VIOLATED THE
DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENTS.

Ground Three:  TRIAL COURT'S FAILURE TO CHARGE THE
JURY WITH THE LESSER-INCLUDED OFFENSE OF
CRIMINAL MISCHIEF CONSTITUTED HARMFUL ERROR
AND DENIED THE DEFENDANT A FAIR TRIAL VIOLATING
THE DEFENDANT'S SIXTH AND FOURTEENTH
AMENDMENTS.

Ground Four:  GERRARD'S CONVICTION FOR ASSAULTING
A POLICE OFFICER AND RESISTING ARREST MUST BE
REVERSED BECAUSE THE COURT FAILED TO CHARGE,
IN THE INSTRUCTIONS ON SELF DEFENSE, ASSAULT OF
AN OFFICER, AND RESISTING ARREST, THAT GERRARD
MAINTAINED THAT HE DID NOT KNOW THE MEN WHO
SEIZED HIM WERE OFF-DUTY POLICE OFFICERS OR THAT
THEY WERE ATTEMPTING TO ARREST HIM IN
VIOLATION OF U.S. CONST. AMEND. SIX AND FOURTEEN.

Ground Five:  TRIAL COURT['S] DEN[IAL OF] THE
PETITIONER'S MOTION FOR A NEW TRIAL OVERTLY
COGNIZANT OF THE ERRORS AND OMISSIONS
CONTAINED THROUGHOUT THE ENTIRE PROCEEDINGS
CONSTITUTED HARMFUL ERROR.

*                    *                    *

Ground Seven:  PROSECUTOR KNOWINGLY PRESENTED
PERJURED TESTIMONY TO SECURE A CONVICTION AND
IN DOING SO, DENIED THE PETITIONER A FAIR TRIAL.

Ground Eight:  TRIAL COURT'S DENIAL TO INSPECT
OFFICER BRAXTON'S PERSONNEL FILE DEPRIVED THE
DEFENDANT OF A FAIR TRIAL IN VIOLATION OF U.S.
CONST. AMEND. SIX AND FOURTEEN.

*                    *                    *

Ground Ten:  PETITIONER'S CONVICTION FOR RESISTING ARREST MUST BE REVERSED BECAUSE THE INSTRUCTION ON THAT OFFENSE DID NOT DEFINE THE ELEMENT OF "PHYSICAL FORCE OR VIOLENCE."

*                    *                    *

Ground Twelve:  COURT IMPOSED ILLEGAL SENTENCE BY DETERMINING AGGRAVATING FACTORS NOT ADMITTED BY THE DEFENDANT NOR DETERMINED BY A JURY IN IMPOSING THE MAXIMUM SENTENCES AND IMPOSING CONSECUTIVE SENTENCE APPLYING THE IDENTICAL AGGRAVATING FACTORS IN VIOLATION OF US. CONST. AMEND. SIX AND FOURTEEN.

(Docket Entry #9 at 2-4.)

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition as follows:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.  See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The AEDPA further limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on

6

the merits.  See 28 U.S.C. § 2254(d).  If a claim has been adjudicated on the merits in state court

proceedings, § 2254(d) limits habeas relief as follows:

> (d) An application for a writ of habeas corpus . . . shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State Court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal Law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly

established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).

Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's]

decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.  A court

must look for "the governing legal principle or principles set forth by the Supreme Court at the

time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the

state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it

"confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme]

Court and nevertheless arrives at a [different] result."  Williams v. Taylor, 529 U.S. 362, 405-06

(2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Williams, 529 U.S. at 413.  However, under § 2254(d)(1), "an *unreasonable* application of

federal law is different from an *incorrect* application of federal law."  Harrington, 131 S. Ct. at

785 (quoting Williams at 410).[3]  As the Supreme Court explained,

> A state court's determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could disagree on
> the correctness of the state court's decision . . . .  Evaluating
> whether a rule application was unreasonable requires considering
> the rule's specificity.  The more general the rule, the more leeway
> courts have in reaching outcomes in case-by-case determinations.
> It is not an unreasonable application of clearly established Federal
> law for a state court to decline to apply a specific legal rule that has
> not been squarely established by [the Supreme] Court.

Harrington, 131 S. Ct. at 786 (citations and internal quotation marks omitted).

"This is a difficult to meet, and highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the doubt."  Cullen, 131

S. Ct. at 1398 (citations and internal quotation marks omitted).  The petitioner carries the burden

of proof, and review under § 2254(d)(1) is limited to the record that was before the state court

that adjudicated the claim on the merits.  Id.

---

[3] See also Wright v. Van Patten, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

# III.  DISCUSSION

## A.  Instructions

In Grounds One, Two, Three, Four, Six and Ten, Petitioner challenges the trial court's failure to properly instruct the jury.  In Ground One, Petitioner challenges the failure to properly instruct the grading of an attempted theft offense, and in Ground Two, he asserts that the failure to obtain an accurate market value for the merchandise before instructing the jury on grades of attempted theft violates the Sixth and Fourteenth Amendments.  In Ground Three, Petitioner contends that the failure to charge the jury on the lesser-included offense of criminal mischief violates the Sixth and Fourteenth Amendments.  In Ground Four, Petitioner asserts that the failure to properly instruct the jury on the elements of self defense, assault on an officer, and resisting arrest, violate his Sixth and Fourteenth Amendment rights.  In Ground Six, Petitioner contends that the failure to mold the credibility instructions constituted plain error.  In Ground Ten, Petitioner argues that the resisting arrest instruction improperly failed to define "physical force or violence."

In Waddington v. Sauausad, 129 S. Ct. 823 (2009), the Supreme Court rejected a habeas petitioner's claim that an accomplice liability instruction was so ambiguous as to violate due process because the jury was confused about what elements had to be established in order for the petitioner to be found guilty as an accomplice.  The Court summarized the law regarding the constitutionality of state court instructions:

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation.  Rather, the defendant must show both that the instruction was ambiguous and that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that

> relieved the State of its burden of proving every element of the
> crime beyond a reasonable doubt . . . .  In making this
> determination, the jury instruction "may not be judged in artificial
> isolation,' but must be considered in the context of the instructions
> as a whole and the trial record." Estelle, supra, at 72. Because it is
> not enough that there is some "slight possibility" that the jury
> misapplied the instruction, Weeks v. Angelone, 528 U.S. 225, 236
> . . . (2000), the pertinent question "is 'whether the ailing instruction
> by itself so infected the entire trial that the resulting conviction
> violates due process,' " Estelle, supra, at 72, 112 S.Ct. 475
> (quoting Cupp, supra, at 147, 94 S.Ct. 396).

Waddington, 129 S.Ct. at 831 -832 (2009) (citations and internal quotation marks omitted).

"[T]he fact that the instruction was allegedly incorrect under state law is not a basis for

habeas relief."  Estelle v McGuire, 502 U.S. 62, 71-72 (1991); see also Engle v. Isaac, 456 U.S.

107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense

instructions under Ohio law, they allege no deprivation of federal rights and may not obtain

habeas relief").[4]  Here, Gerrard does not show that there was a reasonable likelihood that the jury

---

[4] As the Third Circuit explained in a § 2254 case,

> In considering whether this case involves a claim of error under
> the Constitution, laws, or treaties of the United States, it is critical
> to remember that the Supreme Court has made it clear that the
> states define the elements of state offenses.  Accordingly, while
> there may be constitutionally required minimum criteria which
> must be met for conduct to constitute a state criminal offense, in
> general there is no constitutional reason why a state offense must
> include particular elements.

> It thus follows that for the error of state law in the justification
> instructions, assuming that there was an error, to be meaningful in
> this federal habeas corpus action, there would have to be a body of
> federal law justifying the use of deadly force which is applicable in
> a state criminal action charging an offense based on the defendant's
> use of that force. Then the error in the jury instructions would be
> significant if the instructions did not satisfy that body of law. Put in

(continued...)

applied the instructions in a way that relieved the state of its burden of proving every element; nor does he point to a federal requirement that jury instructions on the elements of an offense must include the requested provisions or show that the instructions deprived him of a defense which federal law provided to him.  See Williams v. Beard, 637 F. 3d 195, 223-25 (3d Cir. 2011).  Moreover, Gerrard cites no Supreme Court authority for the proposition that the jury instructions were contrary to or an unreasonable application of a clearly established federal right, as determined by the Supreme Court.  He is therefore not entitled to habeas relief on Grounds One, Two, Three, Four, Six, and Ten.

### B.  New Trial Motion

In Ground Five, Petitioner asserts that the trial court's denial of his motion for a new trial constituted harmful error.  (Pet. Ground Five.)  A district court lacks subject matter jurisdiction over a habeas claim unless the petitioner asserts violation of the Constitution, laws or treaties of the United States, see Estelle, 502 U.S. at 67-68, and a district court may not recharacterize a

---

[4](...continued)
> a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct understate law with respect to the elements of an offense and defenses to it.

Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997) (citations omitted).

state law ground as a federal constitutional claim.[5]  As Ground Five does not assert any

constitutional claim, Gerrard has not shown that the state courts' adjudication of Ground Five

was contrary to or an unreasonable application of clearly established Supreme Court precedent

and he is not entitled to habeas relief on Ground Five.

C.  Prosecutorial Misconduct

In Ground Seven, Gerrard asserts that the prosecutor knowingly presented perjured

testimony regarding who placed the handcuffs on Petitioner at the time of the arrest.  In Napue v.

People of State of Ill., 360 U.S. 264 (1959), the Supreme Court held that due process is violated

when "false testimony used by the State in securing the conviction . . . may have had an effect on

the outcome of the trial." Id. at 272.  "The jury's estimate of the truthfulness and reliability of a

---

[5] In reviewing a § 2254 petition, a federal court is not permitted to address a federal
constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a
ground for relief.  See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas
petition raised claim that the police had elicited petitioner's statements without satisfying
Miranda, the district court erred when it "went beyond the habeas petition and found the
statements [petitioner] made after receiving the Miranda warnings to be involuntary under due
process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains
ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is
not permitted to  consider ground, evident from the facts but not raised in the petition, that
appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by
appealing the conviction).  Nor may the court recharacterize a ground asserted under state law
into a federal constitutional claim.  See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners
simply challenged the correctness of the self-defense instructions under state law, their petitions
alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d
110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion
of testimony violated his rights under state law, federal court may not consider ground, not set
forth in the petition, that exclusion of the testimony violated his federal due process rights).
"[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process
Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well
established that a state court's misapplication of its own law does not generally raise a
constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal
quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." United States v. Bagley, 473 U.S. 667, 676 (1985) (quoting Napue, 360 U.S. at 269)). However, "[a] finding of materiality of the evidence is required . . . .  A new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . ." Giglio v. United States, 405 U.S. 150,  154 (1972) (citations and internal quotation marks omitted).  Thus, in United States v. Bagley, 473 U.S. 667, 677 (1985), the Supreme Court "noted the well-established rule that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  Id. at 677  (citations, and internal quotation marks omitted); accord Smith v. Phillips, 455 U.S. 209,  219 n.10 (1982) ("Even in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony, we have required a new trial only when the tainted evidence was material to the case").

In Ground Seven, Petitioner contends that the prosecutor knowingly presented perjured testimony in order to obtain a conviction.  Specifically, Petitioner states that the prosecutor asked the security officer on direct examination if he assisted in Petitioner's arrest and the security officer testified that he handcuffed Petitioner.  (Petitioner's Mem. of Law at p. 47.)  Petitioner asserts that the security officer admitted on cross examination that he didn't actually place the handcuffs on Petitioner's wrists.  (Id.)  There was no due process violation, however, because the question of who placed the handcuffs on Petitioner's wrists was not material to either Gerrard's guilt or the fairness of his trial.  Accordingly, presentation of the security guard's testimony that he handcuffed Petitioner was not contrary to, or an unreasonable application of clearly

established Supreme Court precedent.  See Prosdocimo v. Secretary, Pa. Dept. of Correc., 2012

WL 120102 (3d Cir. Jan. 17, 2012); Lambert v. Blackwell, 387 F. 3d 210, 242 (3d Cir. 2004).

D.  Access to Police Officer's Personnel File

In Ground Eight, Gerrard asserts that the trial court's denial of his motion for an in-

camera inspection of Officer Braxton's personnel file denied him the right to effectively cross

examine Braxton, contrary to his rights under the Confrontation Clause.  As factual support,

Petitioner states:

> The defendant claimed Officer Braxton used an illegal hold
> (choke hold) in effecting an arrest.  The defendant "bit[]" the inner
> side of the individual's arm to release the hold.  Officer Braxton
> never mentioned the injury in his police report, to his supervisors,
> never sought medical attention, did not mention this injury as a bite
> to the grand jury.  Defendant moved for an in-camera inspection of
> Braxton's personnel file, to determine why Braxton wouldn't
> mention an injury such as this.  The Court denied the motion and in
> doing so, denied the defendant the right to effectively cross
> examine the witness and withhold exculpatory evidence which
> could have negated the offense had Braxton's file contained prior
> acts of excessive force.

(Pet. ¶ 20.H.)

The Appellate Division rejected this argument summarily.  The Law Division rejected the

argument as follows:

> In terms of the failure to allow the defendant access to the police
> personnel files, on Officer Braxton, there was allegations that there
> were inconsistencies that developed at trial.  And if there were,
> those inconsistencies were brought before the jury.  They could
> consider those inconsistencies in terms of credibility.
>
> I gave them a charge which covered inconsistencies in that charge.
> And police personnel records are confidential and there's a
> significant public interest in maintaining that confidentiality.  In
> State vs. Kasaubinski, 177 N.J. Super. 136, 138, Law Division

14

1990, a determination of one's police personnel records should be disclosed as made by balancing between public interest and maintaining the confidentiality of those records and the defendant's right to cross-examine under the confrontation clause . . . The Confrontation Clause of the Federal and State Constitution does not require disclosure of any and all information that might be useful in contradicting unfavorable testimony.  And that's from State v. Harris.  "A party seeking an in-camera review of the records followed by disclosures must advance some factual predicate which would make it reasonable likely that the file will bear such fruit and that the [request] for its consent is not merely a desperate grasping at a straw."  Id. at 398.

And defendant has demonstrated that, pointing out that there was some inconsistencies in the testimony.  Those were before the jury.  You have to consider the entire circumstances of this particular case.  Officer Braxton and the other police officer that were involved in this case were off-duty.  While off-duty they are confronted by someone who is admittedly attempting to steal items from a Sears store.  A Sears store.  And they followed him out of the store and attempted to apprehend him for his theft.  You know.  In a public area with other people in the area.  And there was nothing presented as far as this Court is concerned that would justify rooting around in those confidential files of those police officers.  Just because the defendant asked for it and says, well, they're not telling the truth doesn't make that so.  And I don't see any basis at all for releasing those records to counsel.  And that's why I denied it beforehand.  And certainly it doesn't require a new trial in this particular matter.

State v. Gerrard, Ind. No. 00-08-1367 transcript at pp. 18-8 to 20-9 (N.J. Super. April 19, 2002).

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  U.S. Const. amend. VI.  This guarantee applies to both federal and state prosecutions.  Pointer v. Texas, 380 U.S. 400 (1965).  "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."  Davis v. Alaska, 415 U.S. 308, 316-17 (1974).  Significantly, "the Confrontation Clause guarantees an opportunity for effective cross-

15

examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" Id. at 680 (quoting Davis, 415 U.S. at 318).

In Van Arsdall, the Supreme Court found that, by "cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause." 475 U.S. at 679. The Supreme Court emphasized that, while the exposure of a witness' motive is an important function of the constitutionally protected right of cross-examination,

> [i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed . . . "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish." Delaware Fensterer, 474 U.S. 15, 20 . . . (1985) (*per curiam).*

Van Arsdall, 475 U.S. at 679; see also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("we have never questioned the power of States to exclude evidence through the application of evidentiary

rules that themselves serve the interests of fairness and reliability - even if the defendant would prefer to see that evidence admitted").

This Court finds that the state courts' denial of his motion for an in-camera inspection of Officer Braxton's personnel file was not contrary to, or an unreasonable application of <u>Van Arsdall</u> or other Supreme Court holdings on the Confrontation Clause.  Accordingly, Petitioner is not entitled to habeas relief on Ground Eight.

E.  Blakely Challenge to Sentence

In Ground Twelve, relying on <u>Blakely v. Washington</u>, 542 U.S. 296 (2004),[6] Petitioner argues that his initial sentence violated the Sixth and Fourteenth Amendments because it was based on "factors not admitted by the defendant nor determined by a jury."  (Pet. at p. 8; Petitioner's Legal Mem. at p. 66.)  In response to this Court's Opinion and Order granting a stay, on January 26, 2007, Petitioner filed a second state petition for post-conviction relief in which he argued:  (1) the sentence violated <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and (2) the

---

[6] In 2004, the <u>Blakely</u> Court determined that application of Washington's sentencing guidelines violated the defendant's rights under <u>Apprendi</u> because "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  <u>Blakely</u>, 542 U.S. at 303 (emphasis in original) (citations omitted).  The Supreme Court's 2004 decision in <u>Blakely</u> evolved from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  In <u>Apprendi</u>, the Supreme Court determined that Apprendi had a constitutional right to have a jury, rather than a judge, find bias because the finding was necessary to support an enhanced sentence under the New Jersey hate crimes law. The Supreme Court reversed Apprendi's sentence pursuant to the principle that, "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."  <u>Apprendi</u>, 530 U.S. at 476 (citation and internal quotation marks omitted).  In 2002, the Supreme Court held in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), that imposition of the death penalty under Arizona law violated <u>Apprendi</u> because the trial judge determined the presence or absence of aggravating factors required by Arizona law for imposition of the death penalty. <u>Ring</u>, 536 U.S. at 602.

misconduct of the prosecutor in vouching for the credibility of the State's witnesses violated due

process.  See State v. Gerrard, 2010 WL 1189810 (N.J. Super. Ct., App. Div., Mar. 24, 2010).

On September 7, 2007, Superior Court Judge Paul F. Chaiet re-sentenced Gerrard in accordance

with Blakely, as interpreted by the New Jersey Supreme Court in State v. Natale, 184 N.J. 458,

494 (2005), and State v. Thomas, 188 N.J. 137, 153-54 (2006), and imposed the same sentence.

See State v. Gerrard, 2010 WL 1189810 at *2-*3 (N.J. Super. Ct., App. Div., Mar. 24, 2010).

Gerrard appealed.  By opinion filed March 24, 2010, the Appellate Division rejected

Gerrard's argument that the Law Division violated Blakely when it resentenced Gerrard to the

same term as originally imposed:

> Regarding his sentencing claims, defendant contended that the trial
> judge improperly weighed the aggravating factors, in violation of
> Blakely v. Washington, 542 U.S. 296 . . . (2004).  There the
> Supreme Court held that, to comply with the Sixth Amendment, a
> judge may not sentence a defendant beyond the statutory
> maximum, which is the maximum sentence a judge may impose
> without any additional findings . . .  See State v. Natale, 184 N.J.
> 458, 476 (2005) (adopting the Blakely analysis).
>
> On September 7, 2007, Judge Paul F. Chaiet, who had also
> presided over defendant's trial and sentencing, heard argument on
> his PCR petition . . . .
>
> With respect to defendant's sentencing arguments, the judge first
> noted that this court had rejected his excessive sentence argument
> on direct appeal.  Nonetheless, the judge acknowledged that he was
> obligated to re-sentence defendant in light of State v. Natale.  The
> judge further acknowledged that he had to sentence defendant
> "without regard to the presumptive sentence."
>
> In re-sentencing defendant, the judge noted that, at the time of the
> original sentencing defendant was eligible for an extended term
> under N.J.S.A. 2C:44-3(a), as a "persistent offender[,]" but that the
> judge had found "adequate sentencing flexibility within the charges
> . . . to impose an appropriate sentence[,]" and that an aggregate

18

sentence of fifteen years sentence would adequately protect the public.

The judge then found "the same aggravating and mitigating factors . . . as [he] indicated at the time that [he] imposed the sentence." Noting that <u>Natale</u> "indicates that [he is] not supposed to deviate from the aggravating and mitigating factors that [he] found[,]" and observing that he "found no mitigating factor[s]" the judge "decline[d] to change the sentence that [he] originally imposed[,]" adding:  "The presumptive sentence played no part."  Judge Chaiet thereupon imposed the same sentence as at the original hearing.

     *     *     *

We are satisfied that Judge Chaiet properly re-sentenced defendant in accordance with the dictates of <u>Natale</u>, which states that the "trial court must determine whether the absence of the presumptive term in the weighing process requires . . . a different sentence." <u>Natale</u>, <u>supra</u>, 184 N.J. at 495-96.  The fact that the judge imposed the same sentence as he had done previously does not, as defendant contends, render his sentence illegal.  As noted, defendant was eligible for extended term sentencing as a persistent offender; this would have rendered him subject to a possible maximum term of twenty years, <u>N.J.S.A.</u> 2C:43-7(a)(3); instead he received a maximum of fifteen years.  No further discussion of this issue is warranted.

<u>State v. Gerrard</u>, 2010 WL 1189810 *1-*3 (N.J. Super. Ct., App. Div., Mar. 24, 2010), <u>certif. denied</u>, 203 N.J. 94 (July 12, 2010) (table).

When Gerrard was originally sentenced in 2002, New Jersey law provided that a court "shall impose" the presumptive sentence of seven years for a crime of the second degree and four years for a crime of the third degree, "unless the preponderance of aggravating or mitigating factors, as set forth in subsections a. and b., weigh in favor of a higher or lower term within the limits provided in N.J.S. 2C:43-6."  N.J. STAT. ANN. § 2C:44-1f(1)(c) and (d).  Under the statute,

the trial court could increase the presumptive sentence only if the court found a preponderance of aggravating factors.  See N.J. STAT. ANN. § 2C:43-6a(2) and (3).

At Gerrard's 2002 sentencing, the trial judge increased Gerrard's sentence on each count beyond the presumptive term after finding no mitigating factors, and finding aggravating factors (3), (6), and (9), i.e., "[t]he risk that the defendant will commit another offense;" "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted;" and "[t]he need for deterring the defendant and others from violating the law."  See N.J. Stat. Ann. § 2C:44-1a(3), (6), (9).  In light of Gerrard's resentencing in 2007, this Court construes Ground Twelve as an argument that the Supreme Court of New Jersey's application of Blakely in Natale and Thomas is nevertheless contrary to, or an unreasonable application of Blakely and Apprendi.

In 2005, in State v. Natale,184 N.J. 458, 466 (2005), the New Jersey Supreme Court determined that "a sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors, other than a prior criminal conviction, violates a defendant's Sixth Amendment jury trial guarantee."  In 2006, the New Jersey Supreme Court rejected the argument that aggravating factors (3), (6), and (9) fall within Blakely's prior conviction exception and determined that "judicial fact-finding must be limited to the finding of the existence of a prior conviction . . . .  In accordance with Natale, supra, the court should re-determine defendant's sentence within the extended-term range based on aggravating and mitigating factors found to be present . . . .  In balancing those factors, the court shall not be required to start from the fixed point of the previously applicable statutory presumptive sentence for the extended-term range."  State v. Thomas, 188 N.J. 137, 153-54 (2006) (citations omitted).

20

To remedy the Sixth Amendment <u>Blakely</u> violations found in <u>Natale</u> and <u>Thomas</u>, the New Jersey Supreme Court could have required the jury to find aggravating factors beyond a reasonable doubt.  However, in remedying the Sixth Amendment violation, the New Jersey Supreme Court construed New Jersey law in a manner analogous to the way the Supreme Court construed the federal sentencing guidelines in <u>United States v. Booker</u>, 543 U.S. 220, 246 (2005). The <u>Booker</u> Court explained that ""when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."  <u>Id.</u> at 233.  To bring the Sentencing Guidelines into conformity with the Sixth Amendment, the <u>Booker</u> Court excised from the Sentencing Reform Act the statutory provisions that made the Sentencing Guidelines mandatory and thereby rendered the Guidelines advisory.  Thus, the Court held that "without . . . the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges - the statute falls outside the scope of <u>Apprendi's</u> requirement."  <u>Id.</u> at 259 (citations and internal quotation marks omitted).  In other words, by excising that portion of the statute which made the sentence-enhancing factors (found by a judge) mandatory, and by ruling that these factors are now advisory, the <u>Booker</u> Court held that the judicial determination of these advisory factors does not violate the Sixth Amendment.  <u>Id.</u> at 265-67.

Like the <u>Booker</u> Court, the Supreme Court of New Jersey elected to avoid the Sixth Amendment <u>Apprendi</u> issue by eliminating the presumptive terms and construing New Jersey's aggravating factors as discretionary.  "Although judges will continue to balance the aggravating and mitigating factors, they will no longer be *required* to do so from the fixed point of a statutory presumptive . . . .  Although no inflexible rule applies, reason suggests that when the mitigating

factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range." Natale, 184 N.J. at 488.

Because Gerrard was resentenced in 2007 in accordance with the holdings of Natale and Thomas, his resentencing avoided the Sixth Amendment issue under Apprendi by eliminating the presumptive sentence and making the aggravating and mitigating factors discretionary.  Because the Supreme Court approved this remedy in Booker, the New Jersey courts' adjudication of Gerrard's Sixth Amendment claim after his 2007 resentencing was not contrary to, or an unreasonable application of Apprendi, Blakely, Booker, or other Supreme Court holdings.  See Reid v. Ricci, 2009 WL 2027107 *4-6 (D.N.J. July 7, 2009) (Natale comports with Blakely and Booker); Lorenzo v. Power, 2009 WL 2016069 *11-14 (D.N.J. July 6, 2009) (same).  And because nothing in Booker, Blakely or Apprendi prevents a sentencing judge from imposing the same term of incarceration as that imposed prior to resentencing, Gerrard is not entitled to habeas relief on Ground Twelve.

F.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


s/Peter G. Sheridan
Peter G. Sheridan, U.S.D.J.


Dated:  January 26, 2012